UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD IRVING BECKMAN AND KARI ANN BECKMAN | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:23-cv-00034 |
| REGINA CAELI, INC. a/k/a REGINA CAELI ACADEMY AND FATHER AUGUSTINE TRAN | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>REGINA CAELI, INC. A/K/A REGINA CAELI ACADEMY'S</u>
## <u>MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

Defendant Regina Caeli, Inc. a/k/a Regina Caeli Academy's ("RCA") files this Motion to Dismiss Plaintiffs' Richard Irving Beckman and Kari Ann Beckman's Complaint.  Dismissal is appropriate under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over RCA, a Georgia citizen; or alternatively, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.    <u>INTRODUCTION</u>

1.    The Court should see the Beckmans' lawsuit for what it is – a judicially-funded public relations stunt traditional media refused them.  The only story here is former RCA Executive Director Kari Ann Beckman cheated on her husband, then-RCA President and Chairman of the Board Rich Beckman, with another board member, and the Beckmans resigned in the wake of the controversy.  Kari's adultery and the Beckmans' resignations were widely reported by reputable news media.[1]

---

[1] Rod Dreher, Adultery 1, Veritatis Splendor 0, The American Conservative, available at https://www.theamericanconservative.com/veritatis-splendor-kari-beckman-adultery/ (last visited April 17, 2023).

2.      Unwilling to envision an RCA without them or move on with their lives, the Beckmans have chained themselves to a false victim narrative and besmirched RCA's good name and standing in the Catholic community with a litany of legally deficient claims and imagined grievances.  Paradoxically, however, the Beckmans' factual allegations cannot get out of the way of the legal claims they assert.

3.      The Beckmans' egotistical recitations of their creation of RCA and its attendant intellectual property, 19-year dominion over RCA, and celebrity within the international Catholic community plead them out of most of their claims (fraud, negligent misrepresentation, defamation, copyright infringement, and declaratory judgment). These allegations also put the Beckmans at irreconcilable odds with each other with respect to Rich's alleged breach of contract and FLSA claims. Kari was the Executive Director at all relevant times. Therefore, if Rich complains of not being compensated for his time as President and Chairman of the Board, he must go through Kari, including, but not limited to, proving willful failure to pay wages in order to extend his FLSA claim beyond the two-year statute of limitations. The remainder of the claims are either moot or foreclosed by federal law (declaratory judgment, tax issues, and copyright conversion). Further, the Court is barred from considering the claims against Defendant Father Augustine Tran ("Fr. Tran") because they pertain to church matters under the ecclesiastical abstention doctrine.

4.      Paucity of any of their legal claims aside, the Beckman's facetious attempts to paint themselves as victims of the organization they founded and ran with an iron fist for nearly two decades fall flat. The position the Beckmans find themselves in is self-inflicted. RCA and its prestigious reputation as the leading homeschool-hybrid education in the Catholic community cannot become the scapegoat for Kari's personal indiscretions. For the reasons outlined below,

RCA should be dismissed for lack of personal jurisdiction, and the Complaint should be dismissed in its entirety.

## II.      FACTUAL BACKGROUND

### A.      The Beckmans Found RCA in Roswell, Georgia in 2003; Serve as Executive Director and President for Twenty Years

5.      The Beckmans, along with other Catholic homeschoolers, founded RCA in 2003. [Doc. 1] at ¶ 14. Rich was President and Chairman of the Board until he resigned in the midst of Kari's affair in November 2021. *Id*. at ¶ 19. Kari was the Executive Director. *Id*. at ¶ 22.

### B.      Kari Registers Copyrights for RCA's Logo and Mission Statement; Allows RCA to Use Them in Exchange for Salary.

6.      Kari alleges she developed RCA's logo and Mission Statement prior to founding RCA in 2003. *Id*. at ¶ 17. Kari also alleges she registered the copyrights under Registration Nos. VA002301284 and TX0009054637, respectively. *Id*. Omitted from the Complaint are the dates those copyrights were registered.  Each was registered almost twenty years after RCA first use without attribution and *after* Kari left RCA, on December 10 and 22, 2021, respectively. True and correct copies of captured information for the copyrights from the electronically available Copyright Public Records System are attached hereto as **EXHIBITS A** and **B**.[2] However, Kari does not allege she ever prohibited RCA from using the logo and Mission Statement at any point in her 19 years as Executive Director. *Cf. id*. at ¶¶ 17, 99-100. Moreover, Kari admits that, after the first five years, she was paid a salary for all of her contributions to RCA – including its use of the copyrights. *Id*. at ¶ 18. Finally, Kari does not allege there was a written license agreement, nor does she allege she revoked any permission to use the copyrights until November 2021.

---

[2] The Court can consider these emails because it is referenced in the Complaint and central to the claims made therein. *Ross v. NavyArmy Cmty. Credit Union*, No. 2:21-CV-168, 2022 WL 100110, at *2 (S.D. Tex. Jan. 11, 2022) (Morales, J.).

**C.      Rich Volunteers for RCA; Kari Does Not Pay Rich**

7.      Despite holding the titles of "President" and "Chairman of the Board," Rich admits he "volunteered his time" to RCA, and "never received a salary or other renumeration for the time expended in these" volunteer capacities. *Id*. at ¶¶ 19, 31. However, for all the allegations regarding "[t]he Beckmans' sacrifice, leadership, and financial prudence," *id*. at ¶¶ 21-22, Rich *does not* allege who, other than he and Kari, would be responsible for fixing his salary or complying with wage and hour laws like the FLSA. *Cf. id*. at ¶¶ 122-124. Moreover, while Rich pleads "RCA. . . . failed to pay Rich. . . . in violation of their agreements," Rich does not attach or elucidate which of the "one or more enforceable contractual agreements" he allegedly entered "during his 19-year tenure with RCA[.]" *Id*. at ¶¶ 125-127.

**D.      Kari Establishes Herself as a Public Figure**

8.      Kari alleges that: "during the nineteen years the Beckmans led the organization [RCA], including Kari's work as Executive Director of RCA. . . . RCA grew into a thriving non-profit and educational institute with twenty-three centers in the United States and two affiliated centers in the United Kingdom, serving thousands of students and their families[.]" *Id*. at ¶ 19. Moreover, Kari alleges she made "media appearance[s] and coverage of the [Veritatis Splendor] projects [discussed below] on both the local and national level[.]" *Id*. at ¶ 30.

**E.      Kari's Affair and the Beckmans' Resignations**

9.      The Beckmans allege Kari decided to step out on her husband and commit the mortal sin of adultery around or before "the spring and early summer of 2021." *Id*. at ¶ 36.  In the fallout of Kari's marital infidelity, Kari, as RCA's Executive Director, placed herself on medical leave on October 13, 2021. *Id*. at ¶¶ 37-38. She told her husband she had been cheating on him with another RCA board member the next day. *Id*. at ¶ 39.

4

10.     Consistent with her status as a public figure, Kari alleges former RCA employees and bloggers have discoursed about her infidelity. *Id*. at ¶¶ 60-61. Kari's indiscretions have also been documented by reputable publications such as The American Conservative, *see supra* note 1, and other Catholic commentators, such as the Pope Francis Generation. *See* Paul Fahey, *Splendor of Truth/Spiritual Abuse*, POPE FRANCIS GENERATION, available at https://www.popefrancisgeneration.com/p/splendor-of-truth-spiritual-abuse (last visited April 16, 2023).

**F.     The Beckmans' Allegations Have No Connection with Texas.**

11.     The Beckmans admit they founded RCA in Georgia, incorporated it there, and cited Roswell, Fulton County, Georgia as the location for RCA's principal place of business. There are only two allegations that attempt to tie RCA to Texas.  First, is the Veritatis Splendor project – a prototype Catholic community the Beckmans helped conceive ("VS Project") – and which now exists as a separate organization and has since before this civil action was filed. *See* https://splendorhq.com/. Although the Beckmans temporarily relocated to Winona, Texas to launch the VS Project, none of their claims arise out of that project. Second, RCA operates a "Dallas Center" from which the Beckmans allege three of their children briefly attended school *before* the Beckmans shuttled their family back to Atlanta in the wake of Kari's affair. [Doc. 1] at ¶¶ 25-35, 60, 64-66.

12.     No actionable claim arises from these alleged contacts. All of the underlying facts arose from RCA's ongoing operations in Georgia <u>and</u> would have arisen regardless of whether the Beckmans' were present in Texas. Moreover, the Beckmans' personal ties to Texas are tenuous at best. The Beckmans allege they have oscillated between Texas and Georgia following their resignations, alleging first that they moved back to Georgia, their home of 25 years, but also that, as of the time of filing, they were Texas domiciliaries. *Id*. at ¶¶ 8-9, 65.

G.      **No Legal Claims for Wrongful Termination or Retaliation.**

13.     It is undisputed the Beckmans ruled RCA from its founding until their departures. While the Complaint employs inciteful rhetoric such as "conspiracy" and "ouster," *id*. at ¶¶ 59-66, the Beckmans do not assert any claims for wrongful termination or retaliation – nor could they. Thus, any intimations about their departure from RCA reflect their disappointment rather than actionable legal claims.

## III.      LEGAL STANDARDS

A.      **Motion to Dismiss for Lack of Personal Jurisdiction.**

14.     The plaintiff bears the burden of establishing a district court's personal jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing. *Wilson v. Belin*, 20 F.3d 644, 647–48 (5th Cir. 1994). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

15.     A federal court may assert personal jurisdiction over a non-resident defendant "if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the two-step inquiry collapses into one federal due process analysis. *Wilson*, 20 F.3d at 646–47. "Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed [itself] of the benefits and

6

protections of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (internal quotation marks omitted).

16.    Texas courts only have jurisdiction over a non-resident defendant when jurisdiction is (1) proper under the Texas long-arm statute and (2) consistent with federal and state due-process guarantees. *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). The only question to be addressed, then, is whether a Texas court can constitutionally exercise jurisdiction over the defendant. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202 (Tex. 1985). If the defendant produces sufficient evidence negating the jurisdictional grounds pleaded by a plaintiff, the burden shifts to the plaintiff to show that the Court has jurisdiction over the defendant. *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex. App.—Corpus Christi 1999, no pet.).

17.    This Court does not have personal jurisdiction over RCA for the following reasons:

(a)    RCA is not and has never been a resident of Texas or at home in Texas;

(b)    RCA does not have minimum contacts with Texas so as to permit long-arm jurisdiction; and

(c)    the exercise of personal jurisdiction by this Court over RCA would offend traditional notions of fair play and substantial justice and deprive RCA of due process guaranteed by the United States Constitution.

**B.    Motion to Dismiss for Failure to State a Claim**

18.    To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Ross v. NavyArmy Cmty. Credit Union*, No. 2:21-CV-168, 2022 WL 100110, at *2 (S.D. Tex. Jan. 11, 2022) (Morales, J.) (granting motion to dismiss for failure to state a claim). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The facial plausibility standard is not a probability standard, but it instead requires the plaintiff's factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While a court must take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

### A.   The Court Lacks Personal Jurisdiction over RCA.

#### 1.   The Beckmans failed to adequately plead general jurisdiction.

19.     Corporations like RCA are subject to general jurisdiction only in two places: (1) their state of incorporation; and (2) the state where they maintain their principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 n.19 (2014). The Beckmans allege RCA is incorporated and maintains its principal place of business in Georgia. [Doc. 1] at ¶ 10. Therefore, RCA is not "at home" in Texas, and the Court cannot exercise general jurisdiction over it.

#### 2.   The Beckmans failed to adequately plead specific jurisdiction.

20.     This Court also lacks specific jurisdiction over RCA. Specific jurisdiction applies when a non-resident defendant "has purposefully directed its activities at the forum state and ***the***

8

*litigation results from alleged injuries that arise out of or relate to those activities*."
*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir.
2019) (emphasis added). For specific jurisdiction to exist, "the defendant's suit-related conduct
must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284
(2014). There are two related aspects of this necessary relationship: (1) it must arise out of
contacts that the "defendant *[it]self*" creates with the forum state and (2) it must arise out of
contacts with the forum state itself, not the defendant's contacts with persons who reside there.
*Id.* at 284-85. Contacts with the forum state that are unrelated to the events underlying the
lawsuit cannot establish specific jurisdiction. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500
(5th Cir. 2012). A review of the activities and contacts must demonstrate that the nonresident
defendant "purposefully avails itself of the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 475 (1985).

21.     The plaintiff bears the initial burden of pleading sufficient allegations to bring a
nonresident defendant within the provisions of the long-arm statute." *BMC Software Belgium,
N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex. 2002); *Kelly v. Gen. Interior Const., Inc*., 301
S.W.3d 653, 658–59 (Tex. 2010). "If the plaintiff fails to plead facts bringing the defendant
within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious
acts in Texas), the defendant need only prove that it does not live in Texas to negate
jurisdiction." *Kelly*, 301 S.W.3d at 658–59.

22.     The Beckmans' allegations disclose with certainty that specific jurisdiction does
not exist. The Beckmans' only allegations of specific jurisdiction are merely formulaic
recitations parroting the Fifth Circuit's three prong test for specific jurisdiction. *Compare* [Doc.

9

1] at ¶ 5 *with JTH Tax, LLC v. Butschek*, No. 6:20-CV-26, 2020 WL 5083523 at *2 (S.D. Tex. Aug. 3, 2020) ("(1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether [she] purposely directed [her] activities toward the forum state or purposefully availed [herself] of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.") (alterations in original). This allegation facially fails to satisfy the *Twombly/Iqbal* pleading standard.

23.     The Beckmans' paltry factual allegations fair no better. The Complaint makes only passing reference to two alleged actions RCA took with respect to Texas: (1) purchasing the land for the VS Project; and (2) operating a "Dallas Center" from which the Beckmans allege three of their children briefly attended school *before* the Beckmans shuttled their family back to Atlanta in the wake of Kari's affair. [Doc. 1] at ¶¶ 25-35, 60, 64-66. No actionable claim arises from these alleged contacts.

24.     The Beckmans' claims fall into three buckets: (1) those sounding in tort – *e.g.*, fraud, negligent misrepresentation, and defamation; (2) those sounding in contract – breach of contract and declaratory judgment; and (3) federal causes of action – copyright infringement, FLSA, and federal tax issues. All of these claims arise out Defendants' actions in Georgia, not Texas.

25.     The tort claims arise out of a board meeting wherein the declarant at issue, Fr. Tran, was seated in Georgia. *Id*. at ¶ 49. The breach of contract, FLSA, and declaratory judgment claim regarding Rich's independent contractor status arise out of the Beckmans' nearly twenty years of volunteering for RCA in Georgia and internationally. *Id*. at ¶¶ 12, 18-20. Moreover, the allegation relating to an inability to attend graduation during the 2021-2022 school year was

from RCA's Atlanta Center – not Dallas – and is moot. *Id*. at ¶¶ 64-66.  Finally, the claims related to federal law like copyright infringement and tax issues also arise in Georgia because that is where RCA maintains its principal place of business, uses the RCA logo and Mission Statement, and issues tax documents. *Id*. at ¶ 10.

26.     Thus, the Beckmans are essentially down to "effects-based" jurisdiction arising out of Fr. Tran's comments during the Board meeting. However, the Fifth Circuit has scaled back the application of the effects test in recent years, noting that effects jurisdiction "is rare." *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F. 3d 309, 314 (5th Cir. 2007); *see also AllChem Performance Prods. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 793 (S.D. Tex. 2012) (discussing limited applicability of effects jurisdiction); *Williams v. eAdGear Holdings USA, Inc.*, No. 13-CA-125, 2014 U.S. Dist. LEXIS 190329, at \*5 (W.D. Tex. Jan. 7, 2014) (opining that effects jurisdiction was not common). Likewise, the Fifth Circuit has "expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." *Moncrief*, 418 F. 3d at 314*. See also, e.g., McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (explaining that jurisdiction must not be based on the fortuity of one party residing in the forum state); *Coon v. Reveal Labs, Inc*., No. A-13-CA-667 LY, 2013 U.S. Dist. LEXIS 194730, at \*17 (W.D. Tex. Oct. 17, 2013) (holding that the plaintiff failed to establish personal jurisdiction over the defendant because the only jurisdictional basis was the alleged harm to a Texas resident). That is precisely the case here insofar as the basis for the Beckmans' claims is harm allegedly suffered by them as a result of Fr. Tran's alleged improper disclosure of information learned in confidential counseling.

27.     For all of these reasons, even taking the Beckmans' factual allegations as true, the Complaint discloses that all but one of the Beckmans' claims would have arisen *regardless* of

whether the Parties had ever stepped foot in Texas. Therefore, the Beckmans fail the second prong of the specific jurisdiction test because their "cause[s] of action [do not] arise[] out of or result[] from the [RCA]'s forum-related contacts." *JTH Tax, LLC*, 2020 WL 5083523 at *2. Consequently, the burden has not shifted to RCA to disprove jurisdiction with evidentiary submissions. *Id*. Plaintiffs' jurisdictional allegations are facially deficient.

28.     RCA should be dismissed under Fed. R. Civ. P. 12(b)(2). Alternatively, RCA adopts Fr. Tran's Motion to Transfer because Fr. Tran is a necessary and indispensable party.[3]

**B.     The Beckmans Fail to State Any Claim for Relief.**

**1.     Choice of Law.**

29.     Texas follows "[t]he 'most significant relationship' rule . . . [in] all civil matters except those contract cases in which the parties have agreed to a valid choice of law clause." *Alert 24 Sec., LLC v. Tyco Int'l, Ltd.*, 823 F. Supp. 2d 589, 595 (S.D. Tex. 2011) (alterations in original) (internal quotation marks omitted). There is no choice of law clause. For the reasons outlined above and in Fr. Tran's Motion, Georgia has the most significant relationship to the Parties, and therefore, Georgia law governs the Beckmans' state law claims. RCA briefs Georgia and Texas law out of an abundance of caution.

**2.     Texas Declaratory Judgment Act Claim Fails.**

i.     Declaratory judgment unavailable for federal tax liability.

30.     The Beckmans seek a declaratory judgment under the Texas Declaratory Judgment Act relating to their federal tax liability. [Doc. 1] at ¶¶ 82-85. **The Texas "Declaratory Judgments Act cannot be used as a vehicle to avoid or evade the exclusive administrative process and remedies in the tax code."** *City of Fort Worth v. Pastusek Indus.,*

---

[3] Because the Beckmans' Complaint is a shotgun pleading alleging "Defendants" – RCA and Fr. Tran together – took certain complained-of actions **30 times** between their fraud, negligent misrepresentation, defamation, copyright infringement, and copyright conversion, Fr. Tran is a necessary and indispensable party.

*Inc.*, 48 S.W.3d 366, 371 (Tex. App.-Fort Worth 2001) (applying state law) (emphasis added). Thus, it follows that the Court cannot use the Texas Declaratory Judgment Act to declare federal tax liability.

31.    Moreover, 28 U.S.C. § 2201(a), which controls in federal court, denies the Court subject matter jurisdiction to decide tax issues. *See* 28 U.S.C. § 2201(a). **"This provision prohibits federal courts from 'entertaining    proceedings    for    declaratory    relief    in cases *involving* federal taxes.'"** *Stone v. I.R.S.*, No. 3:11-CV-2263-B-BK, 2012 WL 369251, at *2 (N.D. Tex. Jan. 17, 2012) (internal quotation marks omitted); *Horne v. U.S.,* 519 F.2d 51, 52 (5th Cir. 1975) ("[i]t is well settled that a declaratory judgment cannot be issued in a tax case") (emphasis added). Therefore, the declaratory judgment claim relating to federal tax liability should be dismissed.

ii.    <u>Beckmans fail to state a claim to declare Rich is not an independent contractor.</u>

32.    The Beckmans also "request the Court to declare that Rich was an employee of RCA rather than an independent contractor." [Doc. 1] at ¶ 85. "A federal court may not issue a declaratory judgment unless an actual controversy exists." *See Middle S. Energy, Inc. v. New Orleans,* 800 F.2d 488, 490 (5th Cir. 1986). To establish an actual controversy, "[t]he plaintiff must allege facts showing that 'there is a substantial likelihood that he will suffer injury in the future' in order to meet the controversy requirement." *BNSF Ry. Co. v. United Transp. Union*, 462 F. Supp. 2d 746, 752 (S.D. Tex. 2006) (internal quotation marks omitted). "[T]he controversy must be ongoing, and it may not be merely conjectural, hypothetical, or contingent." *Id.* (internal quotation marks omitted). Here, Rich does not allege any facts showing any likelihood of future injury. *Compare id. with* [Doc. 1] at ¶ 85. Therefore, he has not alleged an "actual controversy." This claim should be dismissed.

### 3.   Fraud and Negligent Misrepresentation Claims Fail.

33.     RCA addresses these claims together because they are both subject to the Rule 9(b) pleading standard <u>and</u> are predicated on the same operative facts. *Fearrington v. Boston Sci. Corp.*, 410 F. Supp. 3d 794, 807 (S.D. Tex. 2019) (dismissing plaintiff's claims for fraud and negligent misrepresentation, which relied on same allegations of fact, for failure to meet heightened pleading standard); *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1314-15 (N.D. Ga. 2014) (same). The elements of fraud and negligent misrepresentation are virtually identical under Texas and Georgia law.[4]

34.     The Beckmans allege RCA perpetrated two frauds: (1) the Board falsely represented that it "supported Kari's medical leave of absence," and/or failed to disclose that it did not "support" her leave of absence, [Doc. 1] at ¶ 86; and (2) RCA "issued original tax documents" on which the Beckmans relied in filing their individual tax returns, and/or failed to disclose that "RCA was going to issue falsely amended tax documents." *Id.* at ¶ 87. The Beckmans' negligent misrepresentation claim merely repackages the same irrelevant and conclusory allegations with the formulaic recitation the representations were made negligently rather than intentionally or recklessly. [Doc. 1] at ¶¶ 90-95.

---

[4] *Compare In Int. of C. M. V.*, 479 S.W.3d 352, 361 (Tex. App.-El Paso 2015) (defining the fraud elements as a false, material representation the speaker knew was false or made recklessly without knowledge of the truth, intending to induce action, reasonable reliance, and injury.) *with Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 564 (Ga. 2020) (defining the fraud elements as a false representation, scienter, intention to induce an action, justifiable reliance, and damages) *and Zaan, LLC v. Sangani*, No. 05-12-00423-CV, No. 05–12–00423–CV, 2015 WL 2398652, at *6 (Tex. App.-Dallas May 20, 2015) (negligent misrepresentation requires: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation) *with First Bank of Ga. v. Robertson Grading, Inc.*, 761 S.E.2d 628, 638 (Ga. Ct. App. 2014) ((1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance).

35.     First, the Beckmans fail to satisfy Fed. R. Civ. P. 9(b)'s heightened pleadings standard for fraud and negligent misrepresentation because they did not allege "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (internal quotation marks omitted).

36.     Second, support of Kari's medical leave is a non-issue, as she was Executive Director and had absolute discretion to place herself on leave. [Doc. 1] at ¶ 22. Moreover, Kari cannot show the key element of fraud and negligent misrepresentation – falsity – in any allegations of RCA's "support" of her self-imposed medical leave (or lack thereof); RCA had no choice in the matter. Further, Kari cannot demonstrate reasonable reliance on alleged "support" that occurred *after she had already placed herself on leave*. It is chronologically impossible. Finally, to the extent any RCA constituent offered any "support" at all, pure "puffery" or opinion on such nebulous, immaterial matters as Kari's personal decisions cannot form the basis of fraud. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) ("An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud."). *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) ("Excessively vague, generalized, and optimistic comments—the sorts of statements that constitute puffery. . . [are] not material."). These claims should be dismissed.

37.     The Beckmans' claims vis-à-vis the tax documents fail for the reasons outlined in Section IV.B.4.i. below.

### 4.      The Beckmans' Defamation Claims Fail.

38.     The Beckmans allege RCA defamed them by: (1) issuing "erroneous tax forms" to them; and (2) "issued talking points around November 14, 2021 to RCA staff and student families asserting RCA was prepared with a succession plan" for after Kari retired. Defamation

15

requires "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages." *Van der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.-Fort Worth). *Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 460 (Ga. Ct. App. 2011)  (defining the elements of defamation as a false, defamatory, and unprivileged communicated with at least negligence to a third party, which resulted in special or general harm).

i.   <u>Federal tax documents cannot form basis of defamation claim</u>.

39.   Statements in federal tax documents are not defamatory. *Klayman v. Jud. Watch, Inc.,* No. CIV.A.06-670 CKK, 2007 WL 140978, at *18 (D.D.C. Jan. 17, 2007) ("The Court shall therefore grant Fitton and Judicial Watch's motion to dismiss Count Nine insofar as it is based on allegedly defamatory statements made in Judicial Watch Form 990 tax returns."), *opinion vacated in part on other grounds on reconsideration,* No. CIV.A.06 670 CKK, 2007 WL 1034936 (D.D.C. Apr. 3, 2007) (granting dismissal of additional claims). This is because RCA's statement to the IRS are compulsory, not voluntary, and any failure to disclose excess benefits could expose RCA to tax liabilities or other adverse consequences. *Cf. id.*; *Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV0908241MMMFFMX, 2011 WL 13214303, at *12 (C.D. Cal. Jan. 31, 2011) (finding that an attachment explaining all financial dealings responsive to the IRS's required disclosures under Section 4958 regarding excess benefit transactions were privileged and thus, not violative of the parties' non-disparagement clause). RCA's statements within their filed tax documents are therefore privileged and cannot form the basis of any defamation claim. *Brit. Overseas Airways Corp. v. Tours & Travel of Houston, Inc.*, 568 S.W.2d 888, 892-93 (Tex. App.-Houston 1978); *Eason v. Marine terminals Corp.*, 710 S.E.2d 867, 871 (Ga. Ct. App. 2011) (citing O.C.G.A. § 51–5–7(2)). Thus, the Beckmans' claims relating to statements on tax

16

documents should be dismissed in all of their various formulations – fraud, negligent misrepresentation, and defamation. *See surpa* Section IV.B.3.

ii.   <u>Statements regarding succession plan are not actionable</u>.

40.    The Beckmans' allegation that any reference to a "succession plan" was false is the height of hubris.[5] [Doc. 1] at ¶ 96. As this lawsuit underscores, the Beckmans cannot conceive of an RCA without them. However, the Beckmans' factual allegations disclose with certainty that the complained-of statement was not defamatory ***because it was true***. Moreover, it fails to recognize that: (1) the Beckmans are public figures; (2) their resignations were a matter of public concern, and therefore, they must meet a heightened showing of actual malice to state a defamation claim, and (3) the statement is so benign that, as a matter of law, it could not proximately cause any injury, and no special injury was pleaded as required to state a claim for this alleged defamation *per quod*.

a.   *Complained-of Statement is True.*

41.    First, the alleged defamatory statement, which was appended to a resignation email Kari authored and authorized Fr. Tran to send to RCA's families, reads in full:

> This leadership team, which has been in place for the past year and has been effectively running the organization, is the result of our ongoing succession planning.

*See* November 12, 2021 email attached hereto as **<u>EXHIBIT C</u>**; *supra* note 2. This statement fails the very first element of defamation – a false statement – because it perfectly aligns with the facts alleged in the Beckmans' Complaint. *Khan*, 535 S.W.3d at 198; *Pardue*, 713 S.E.2d at 460.

42.    The Beckmans allege they moved to Texas in January 2021 to "fulfill the promise" of the VS Project. [Doc. 1] at ¶ 26. Kari also alleges that, while working on VS Project,

---

[5] Perhaps rivaled only by their request for appointment of a receiver to protect their legacy despite their complete separation from RCA. [Doc. 1, pg. 25, ¶ C].

17

she spent her time "marketing; working with local realtors; sales event planning; property showing[], including evenings and weekends; networking support of the project; and media appearance and coverage of the projects on both the local and national level[.]" *Id*. at ¶ 30. Although Kari may not have been contemplating full retirement at the time, with Kari fully engaged in "lead[ing] the overall project development," *id*. at ¶ 27, it is to be expected RCA had to make accommodations for other administration – whether denominated as a "succession plan" or otherwise. Thus, the complained-of statement is true or substantially true by Kari's own pleadings, and therefore, unactionable. *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.-Dallas 2003) ("truth, even substantial truth, is a complete defense to defamation"); *Bird v. Weis Broad. Corp.*, 388 S.E.2d 710, 711 (Ga. Ct. App. 1989) (same).

43.     Moreover, the Complaint alleges that RCA sent the email on November 14, 2021, on or around the time that Kari offered her resignation "in November of 2021." [Doc. 1] at ¶¶ 56-57. Thus, it must be true that RCA engaged in "ongoing succession planning" to facilitate the medical leave and impending resignation of their Executive Director. *Day v. Fed'n of State Med. Bds. of the U.S., Inc*., 579 S.W.3d 810, 819 (Tex. 2019) ("If a statement is not verifiable as false, it is not defamatory") (internal citations omitted); *Jaillet v. Ga. Television Co*., 520 S.E.2d 721, 724 (Ga. Ct. App. 1999) ("[A] statement is not considered false unless it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced."). Kari could not have known and did not verifiably plead whether the Board had ever discussed what RCA would look like without her; moreover, the gap between an "ongoing" and "new" succession plan is a distinction without a difference. The e-mail was sent on or around Kari's resignation and can be understood as rhetoric or hyperbole to assuage the understandably concerned RCA families. *Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 414 (Tex.

18

App.-Amarillo 2021) ("[C]ertain forms of words or phrases which, again from their context, are opinions or rhetorical hyperbole. Neither may be actionable."); *cf. also North Atlanta Golf Operations LLC v. Ward*, 870 S.E.2d 814 (Ga. Ct. App. 2022) (Twitter comments describing an employee's "poor" reputation, that the grass was a "joke" and that there is "not a single redeeming quality about [his] work" were "mere statement[s] of opinion or rhetorical hyperbole that are not actionable."). Similarly, RCA's opinion as to the "effective[ness]" of its administration is "either substantially true or [] merely rhetorical hyperbole and therefore an expression of opinion. Both truthful facts and opinion are protected speech." *Bird*, 388 S.E.2d at 711. *Dickson*, 647 S.W.3d at 414.

b.      *No actual malice*.

44.      Kari's allegations establish she is a public figure who must show actual malice to survive a motion to dismiss. Far from establishing actual malice, the Complaint does the exact opposite and proves the complained of-statement was true or substantially true. *See Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002) (defining "actual malice" as "made with actual knowledge that it is false or with reckless disregard for its truth or falsity."); *Ladner*, 806 S.E.2d at 913 ("Actual malice . . . must constitute actual knowledge that a statement is false or a reckless disregard as to its truth or falsity.").

c.      *Failure to plead special damages*.

45.      Although Kari alleges defamation *per se*, the substance of her claims sound in defamation *per quod*. Reference to an "ongoing succession plan" is not *per se* defamatory because it does not charge that Kari is guilty of a crime, dishonest, or immorality or injure her in her trade or business. Thus, Kari must proceed under defamation *per quod*. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. App.-Houston 2013); *Zarach v. Atlanta Claims Ass'n*, 500 S.E.2d 1, 5 (Ga. Ct. App. 1998). It bears repeating, however, that this statement is a

general and nondescript attempt to alleviate concerns brought upon by Kari's decision to take medical leave and/or resign. It is not defamatory under either rubric.

46.     Nevertheless, to state a claim for defamation *per quod*, a Plaintiff must plead "special damages" – i.e., economic injuries and actual pecuniary losses flowing directly from the defamation. *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 425 (Tex. 2020); *Hancock v. Variyam*, 400 S.W.3d 58, 64-65 (Tex. 2013); *McGee v. Gast*, 572 S.E.2d 398, 401 (Ga. Ct. App. 2002). The Complaint fails to do so. Instead, it merely directs the Court to the prayer for relief, wherein Kari seeks mostly general (*not* special) damages. [Doc. 1] at p. 26. While the prayer includes a request for nebulous past and future economic damages, it fails to connect the requested damages to the alleged defamation <u>or</u> assert the post-resignation statement prevented her from engaging in future pursuits, damaged other existing business ventures, or otherwise proximately caused any harm. *Id*. This claim fails.

### d.     *Privileged communication.*

47.     Moreover, RCA's communication to its families about Kari's high-profile departure was privileged, and therefore, unactionable. "A qualified privilege extends to statements made in good faith on a subject in which the maker has an interest or duty, to another person having a corresponding interest or duty." *Roberts v. Davis*, 160 S.W.3d 256, 263 (Tex. App.-Texarkana 2005). "The elements of qualified privilege are good faith, an interest to be upheld, a statement limiting the communication to the proper scope, a proper occasion, and publication in a proper manner and to proper parties only." *Id*.; *see also* O.C.G.A. § 51-5-7(2)(3) ("The following communications are deemed privileged: (2) Statements made in good faith in the performance of a legal or moral private duty; (3) Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned").

48.     Here, given the unique religious commonality among its members, RCA's homeschool families share an interest in the continued success and operation of the Academy into the future. Thus, RCA's families had a sufficient interest in knowing that RCA had a future after the Beckmans, which was the purpose of the communication. *See e.g., Martin v. Sw. Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex. App.-Texarkana 1993) (finding qualified privilege when a company sent letters to those who had supervisory duties over lineman about a particular lineman's failure to follow safety practices because they had an interest to "prevent or reduce the number of accidents."); *Murray v. Cmty Health Sys. Pro. Corp.*, 811 S.E.2d 531, 539 (finding department chair had a qualified privilege to know about a doctor in his department's termination because it would impact his work); *Chaney v. Harrison & Lynam, LLC*, 708 S.E.2d 672, 679 (Ga. Ct. App. 2011) (placing a sign in front of a house saying, "ASK OUR OPINION WHY NOT TO BUY A HARRISON & LYNAM HOME." was not defamatory because owners communicated only with those buyers who had an interest in such knowledge). Therefore, the complained-of statement is privileged and unactionable.

### 5.     Copyright infringement.

49.     The Beckmans allege RCA's ongoing use of the RCA logo and Mission statement violate Kari's copyrights because Kari "has not licensed or otherwise authorized" RCA to use them since November 2, 2021. [Doc. 1] at ¶¶ 99-100. However, Kari's factual allegations lend themselves to finding an irrevocable nonexclusive implied license.

50.     "[U]nder federal law, a nonexclusive license may be granted orally, or may even be implied from conduct." *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quoting 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A], at 10–40 (1997)). "When the totality of the parties' conduct indicates an intent to grant

such permission," as Kari's allegations establish here, "the result is a legal nonexclusive license[.]" *Id.*

51.    The bargained for exchange of consideration makes this license irrevocable. *See id.* at 882 ("nonexclusive license may be **irrevocable if supported by consideration**," because when the nonexclusive license is supported by consideration, a contract is formed). Here, Kari admits she was paid from 2008-2021. *Id.* at ¶ 18. Therefore, RCA must have an implied nonexclusive irrevocable license – otherwise, the Parties' contract is illusory. The result of an illusory contract is neither compelled nor favored by Georgia or Texas law. This claim fails should be dismissed.

52.    Alternatively, Kari abandoned the copyrights through the overt act of allowing RCA to use them as if they were RCA's own intellectual property and without attribution for nearly twenty years without any license or bargained-for exchange. 4-13 NIMMER ON COPYRIGHT § 13.06; *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898 (5th Cir. 1972).

**6.    Federal Law Preempts Conversion of Intellectual Property Claim.**

53.    This claim is duplicative of the Beckmans' copyright infringement claim. [Doc. 1] at ¶¶ 107-111. It is preempted by federal law because the Beckmans did not allege "unlawful retention of the tangible object embodying plaintiff[s'] work." 6A Fed. Proc. Forms § 17:57 & n.16 (citing *U.S.* ex rel. *Berge v. Bd. of Trs. of the Univ. of Alabama*, 104 F.3d 1453 (4th Cir. 1997)).

**7.    Professional Negligence Not Asserted Against RCA.**

54.    This claim is asserted against Fr. Tran only. [Doc. 1] at ¶¶ 112-114.   The Beckmans do not allege RCA is vicariously liable for Fr. Tran's alleged professional negligence. Moreover, because Fr. Tran's actions vis-à-vis the Beckmans pertain directly to his rights and obligations as a priest, this Court lacks jurisdiction to adjudicate them under the ecclesiastical

abstention doctrine. *In re Lubbock*, 624 S.W.3d 506, 508-09 (Tex. 2021) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976)) ("The ecclesiastical abstention doctrine prohibits civil courts from delving into matters of theological controversy, church discipline, ecclesiastical government, or the conformity of members of the church to the standards of morals required of them") (internal citations omitted); *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 401 & n.7 (Tex. 2007).

### 8. <u>No Contract Breached with the Beckmans</u>.

55.     The Beckmans claim RCA breached an alleged contract "to provide educational services for their children" by prohibiting the Beckman's from coming onto school property "and/or attending commencement ceremonies." [Doc. 1] at ¶¶ 115, 119. Tellingly, the Beckmans do not allege which of their eight (8) children's senior graduations they allegedly missed during the 2021-2022 school year. These barebones allegations require dismissal.

56.     Breach of contract claims require breach of a material term, such that defendant failed to tender substantial compliance with terms. *See, e.g. Pena v. Smith*, 321 S.W.3d 755 (Tex. App.-Fort Worth 2010)*. Weathers v. Dieniahmar Music, LLC*, 788 S.E.2d 852, 858 (Ga. Ct. App. 2016). However, the Beckmans fail to allege what material term(s) of the educational services contract RCA breached by allegedly prohibiting the Beckmans from entering school grounds/functions. Moreover, because a student who was a high school senior in 2021's graduation has already passed, the Beckmans' claim is moot. Finally, Plaintiffs can only recover damages which flow naturally from the breach and were contemplated when the contract was made (*i.e.*, the benefit of the bargain). O.C.G.A. § 13-6-2; *Gallagher Benefit Servs., Inc*. v. *Campbell*, No. 1:19-cv-00836-SDG, 2021 WL 5029464, at *2 (N.D. Ga. Aug. 13, 2021); *Powell Elec. Sys., Inc. v. Hewlett Packard Co.,* 356 S.W.3d 113, 118 (Tex. App.-Houston 2011). The Beckmans fail to allege what damages they suffered as a result of RCA's alleged breach of the

educational services contract. Any extra-contractual damages are barred by the economic loss rule. *Pac. Express Co. v. Darnell Bros.*, 62 Tex. 639, 641 (1884); *Stewart v. Lanier House Co.*, 75 Ga. 582, 598 (1886).[6]

### 9. No FLSA Violation; Any Violation was Willful by Kari.

57.     To state a FLSA claim, "Plaintiff must allege facts that, taken as true as recited in the complaint, would show: (1) that he was employed by the defendant; (2) that his work involved interstate activity; and (3) that he performed overtime work for which he was undercompensated." *Bussey v. Bridger Logistics, LLC*, No. 2:19-CV-310, 2020 WL 13413196, at *2 (S.D. Tex. Oct. 21, 2020). Rich alleges he "volunteered his time" to RCA. [Doc. 1] at ¶ 31. Volunteers fall within an FLSA exception. *See* 29 C.F.R. § 553.101. This claim is due to be dismissed. Alternatively, Rich's allegations he served as President and Chairman of the Board at least raise the question of whether he is an exempt executive. 29 U.S.C. § 213(a)(1).

58.     Even if this Court finds Rich was not exempt and stated a claim, he may only recover unpaid wages from 2021. FLSA claims are subject to a two-year statute of limitations for non-willful violations. *Pye v. Oil States Energy Servs., LLC*, 233 F.Supp.3d 541, 564 (W.D. Tex. 2017) (citing 29 U.S.C. § 255(a)). Although there is a three-years statute of limitations for willful FLSA violations, establishing this longer limitation period would require Rich to prove willful violation by Kari. To the extent Rich intends to levy willful violation allegations, he should seek out separate counsel to avoid a conflict of interest and/or file a crossclaim against Kari.

---

[6] To the extent the Court does not dismiss this claim, the Beckmans' daughter, Katie Beckman – who has already ostensibly been hurt enough by her parents' poor decisions – will need to account for the photos she posted to Facebook showing Plaintiffs and all eight children attended graduation for her sister Juliana Beckman on May 15, 2022.

10.     **Breach of contract with Rich.**

59.     Alternatively, the Beckmans allege, Rich had "one or more enforceable agreements with RCA during his 19-year tenure with RCA as, among other titles, an officer and director of RCA," and that "RCA, in violation of their agreements, failed to pay Rich." [Doc. 1] at ¶¶ 125-27. These unidentified, nondescript contracts are barred by the statute of limitations – four (4) years if governed by Texas law, and six (6) years under Georgia law. Tex. Civ. Prac. & Rem. § 16.004; O.C.G.A. § 9-3-24. Thus, Rich cannot recover for any breaches of contract before 2019 under Texas law, or before 2017 under Georgia law.

60.     However, this claim should be dismissed in its entirety because Rich's boilerplate allegation he entered "one or more enforceable contractual agreements" with RCA over the course of 19 years fails to plausibly allege the black-letter elements of offer, acceptance, and consideration or _any_ material terms. Alternatively, Rich's binding admissions in judicio he "self-sacrifice[d]" via his volunteering preclude this claim and confirm there was never a contract for payment. [Doc. 1] at ¶¶ 21, 22, 31, and 35.

## V.     CONCLUSION

For the foregoing reasons, the Court should grant RCA's Motion to Dismiss.


Respectfully submitted this 24th day of April, 2023,


By: _/s/ Bradley E. Chambers_
**Bradley E. Chambers**
Texas Bar No. 24001860
Federal ID No. 22008
**Kimberly A. Chojnacki**
Texas Bar No. 24068696
Federal ID No. 2078408
**BAKER DONELSON**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700

Facsimile:  (713) 650-9701
bchambers@bakerdonelson.com
kchojnacki@bakerdonelson.com

**Tyler P. Bishop\***
Georgia Bar No. 566705
**BAKER DONELSON**
3414 Peachtree Rd, NE, Suite 1500
Atlanta, Georgia 30326
404.577.6000 (Telephone)
404.221.6501 (Facsimile)
tbishop@bakerdonelson.com

*\*Pro hac admission forthcoming*

**ATTORNEYS FOR DEFENDANT
REGINA CAELI, INC. A/K/A REGINA
CAELI ACADEMY**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served upon all counsel of record via the ECF Filing System pursuant to the Federal Rules of Civil Procedure on April 24, 2023.

*/s/ Bradley E. Chambers*
Bradley E. Chambers