United States District Court
Southern District of Texas
**ENTERED**
December 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD IRVING BECKMAN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| V. | § | CIVIL ACTION NO. 2:23-CV-00034 |
| | § | |
| FATHER AUGUSTINE TRAN, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER TRANSFERRING CASE

Before the Court are several pending motions, including Defendant Father Tran's ("Fr. Tran") first amended motion to dismiss or, in the alternative, motion to transfer the case. (D.E. 26).[1] Fr. Tran requests that, if the case is not dismissed, it be transferred to the Northern District of Georgia. *Id.* at 22–23. The Court agrees that the case should be transferred, as the Court finds that transfer is appropriate pursuant to 28 U.S.C. § 1406(a) because venue is improper in the Southern District of Texas. The Court expresses no opinion on Fr. Tran's arguments that do not concern venue. *See id.* at 1–14, 16–22. As such, and for the reasons below, the Court **GRANTS-in-part and DENIES-in-part-as-moot** Fr. Tran's motion to transfer. *See* (D.E. 26).[2] The Court **ORDERS** that this case be **TRANSFERRED** to the **Northern District of Georgia** pursuant to § 1406(a).

---

[1] Also pending are Defendant Regina Caeli's motion to dismiss, (D.E. 27), Defendant Archdiocese of Atlanta's motions to dismiss, (D.E. 32; D.E. 33), Defendant Regina Caeli's motion to strike Plaintiffs' second amended complaint, (D.E. 43), and Defendant Archdiocese of Atlanta's motion to strike, (D.E. 49). Fr. Tran also joins Defendant Regina Caeli's motion to dismiss. (D.E. 26, p. 3).

[2] As such, the Court finds it unnecessary to address the other motions, which remain pending. *See* (D.E. 27; D.E. 32; D.E. 33; D.E. 43; D.E. 49).

### I. Background

#### A. Facts and Procedural History

This case stems from disputes between a private Catholic school and its founders after the founders were ousted from school leadership. *See* (D.E. 21, p. 4–20). Richard Beckman and Kari Beckman (collectively "Plaintiffs") filed the instant action on January 25, 2023, alleging "a pattern of abuse" and harassment. *Id.* at 4.[3] Plaintiffs assert various causes of action against Defendants Father Augustine Tran, Regina Caeli, Inc. ("RCA"), and the Roman Catholic Archdiocese of Atlanta (the "Archdiocese") (collectively "Defendants"). *See* (D.E. 21, p. 1, 3–4).[4]

While Plaintiffs are domiciled in Texas, *id.* at 3, Fr. Tran is a Georgia resident, (D.E. 21, p. 4; D.E. 26, p. 2), and RCA and the Archdiocese are both Georgia nonprofits, (D.E. 21, p. 3–4). Plaintiffs previously resided in Georgia, where they founded RCA over twenty years ago. *See id.* at 4–5. Plaintiffs founded RCA to offer pre-kindergarten through high school students "a classical Catholic education option" that blends in-person schooling and home-schooling. *Id.* In the two decades since its founding, Plaintiffs grew the non-profit from one location in Atlanta to over twenty locations across the United States and the United Kingdom. *Id.* at 5–6. At some point, Plaintiff Kari "engaged in an inappropriate relationship" with a then-director of RCA while she was married to Plaintiff Richard. *Id.* at 9. In 2021, because of Veritatis Splendor—a new RCA

---

[3] The Court notes that Plaintiffs have filed a second amended complaint. *See* (D.E. 37). The Court further notes that Defendants have moved to strike the second amended complaint. *See* (D.E. 43; D.E. 49). As the motions remain pending, the Court looks to the first amended complaint, (D.E. 21), as the operative complaint.

[4] Specifically, Plaintiffs assert the following: fraud as to RCA and Fr. Tran, *id.* at 21–23; negligent misrepresentation as to RCA and Fr. Tran, *id.* at 23–24; defamation as to RCA, *id.* at 24–25; copyright infringement as to RCA, *id.* at 25–26; conversion of intellectual property as to RCA, *id.* at 26–27; professional negligence as to Fr. Tran and employer liability as to the Archdiocese, *id.* at 27–28; breach of contract as to RCA, *id.* at 28–30; and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, as to RCA, *id.* at 29. Plaintiffs further apply for a declaratory judgment in accordance with the Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–37.011, *id.* at 20.

project—Plaintiffs and their family moved to Winona, Texas. *Id.* at 6–7. Around the same time Plaintiffs moved to Winona, Plaintiff Kari experienced mental health difficulties because of the inappropriate relationship. *Id.* She then took a leave of absence from her leadership position at RCA to receive mental health treatment. *Id.* She and Plaintiff Richard sought telephonic spiritual guidance from Fr. Tran. *Id.* Shortly after, Plaintiff Richard informed the RCA Board of Directors about the affair; the Board later met and decided that Plaintiff Kari could no longer continue in her leadership position—she needed to resign or be fired—because her actions violated RCA's code of conduct. *See id.* at 10–12. During the Board meeting, Plaintiffs allege Fr. Tran revealed details of Plaintiff Kari's confidential conversations regarding her affair. *Id.* at 12. Plaintiffs further allege that RCA's leadership, in conjunction with Fr. Tran, conspired to oust her permanently from RCA. *See id.* at 11–16. After Plaintiff Kari no longer occupied a position in RCA's leadership, Plaintiffs allege RCA banned her from RCA's Dallas location. *Id.* at 16. As a result, Plaintiffs moved back to Atlanta to allow their children to continue receiving an education at RCA. *Id.* In response, RCA allegedly banned Plaintiff Kari from the Atlanta location and allegedly "threatened to prohibit [Plaintiff] Kari's daughter" from her high school graduation. *Id.*

In January of 2022, Plaintiffs and RCA engaged in settlement negotiations. *See id.* at 17. These negotiations were unsuccessful. *See id*. In December 2022, RCA contacted Plaintiffs, alleging that they had both received "excess benefit[s] from RCA under Section 4958 of the Internal Revenue Code": Plaintiff Richard allegedly owes RCA $13,635.03, and Plaintiff Kari allegedly owes RCA $82,674.00. *Id.* at 18. Plaintiffs deny receiving any excess benefits. *See id.* at 18–19. After the tax dispute, this suit followed. *See id.* at 20. Plaintiffs assert, individually and collectively against the various Defendants, a host of negligence, defamation, fraud, and breach of contract claims, violations of the FLSA, and seek declaratory relief. *See id.* at 20–30.

### B. The Parties' Arguments about Venue

Plaintiffs assert that venue in the Southern District of Texas is proper "because a substantial part of the events or omissions giving rise to this action occurred" here. *Id.* at 3. In their amended complaint, Plaintiffs argue that:

> Venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district. . . . Port O'Connor, Texas—the city in which [Plaintiffs] reside—is situated within the Southern District of Texas. RCA issued a 2021 Form 1099-MISC and amended 2021 Form W-2, erroneously alleging that [Plaintiffs] received additional compensation income and engaged in an excess benefit transaction during 2021. RCA issued the 2021 Form 1099-MISC and amended 2021 Form W-2 to [Plaintiffs] and notified them via e-mail at their home in Port O'Connor, Texas. The 2021 Form 1099-MISC and amended 2021 Form W-2 constitute a substantial part of the events giving rise to this lawsuit.

*Id.* (citation omitted). In sum, Plaintiffs argue that two tax forms sent via email form the basis for venue in this district. *See id.*

Fr. Tran, on the other hand, argues that venue is not proper here and the Court should dismiss the case because 28 U.S.C. § 1391(b)(1), (2), and (3) do not render this district the proper venue. *See* (D.E. 26, p. 14–16). Specifically, Fr. Tran argues Plaintiffs cannot rely on § 1391(b)(1) because neither he, nor RCA, nor the Archdiocese are residents of this district. *Id.* at 15. Further, Fr. Tran argues that the *only* action that has a tie to this district is the "allegedly erroneous W-2" that Plaintiffs received. *Id.* at 14–15. As such, venue is not proper. *See id.* Finally, § 1391(b)(3) is inapplicable, Fr. Tran asserts, "because there are other districts where venue would be proper[,]" namely—the Northern District of Georgia. *Id.* at 15.

### C. Dismissal for Lack of Subject Matter Jurisdiction or Discretionary Transfer

#### *i. Lack of Subject Matter Jurisdiction: Ecclesiastical Abstention Doctrine*

Fr. Tran argues that this Court lacks subject matter jurisdiction to adjudicate this case because of the ecclesiastical abstention doctrine, which discourages "judicial interference into

matters of church autonomy[.]" *Id.* at 16. Fr. Tran frames this case as stemming from a dispute about Defendant "RCA's mission, values, and Catholic principles" as set forth in the RCA Employee Policy Handbook—meaning that the case concerns "theological controversy [and] church discipline[.]" *See id.* at 17. As such, according to Fr. Tran, this Court cannot hear this matter of "church governance" and must dismiss the claims against him. *See id.* at 18–19.

Plaintiffs disagree, arguing first that Fr. Tran conflates RCA's status as a non-profit corporation with being a church, (D.E. 29, p. 6), and second that the claims at issue can be interpreted under secular and neutral principles of law, meaning the ecclesiastical abstention doctrine is inapplicable, *see id.* at 6–7. To situate this argument, Plaintiffs frame the case as arising out of "Fr. Tran's wrongful, self-interested disclosure of [Plaintiff] Kari's private, confidential, and protected information to RCA[.]" *Id.* at 6.

### ii. Discretionary Transfer

Fr. Tran argues that, if the Court chooses not to dismiss the case, the case should be transferred to the Northern District of Georgia. *See* (D.E. 26, p. 23). Fr. Tran invokes both the plain language of 28 U.S.C. § 1404(a), a statute that confers authority on courts to transfer cases when it would be convenient for the parties and witnesses and in the interest of justice, and the Court's "broad discretion" to transfer. *Id.* at 22 (citation omitted). Fr. Tran further argues that because an "allegedly erroneous W-2" cannot form the basis for proper venue, Plaintiffs—by bringing this case in the Southern District of Texas—are attempting to forum shop. *Id.* at 14–15. Plaintiffs respond by arguing that Fr. Tran has not met the "heavy burden" that defendants who invoke forum non conveniens must carry. (D.E. 29, p. 8) (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Plaintiffs note that "approximately twelve potential witnesses reside in the state of Texas," whereas "only three potential witnesses" reside in the Northern

District of Georgia. *Id.* As such, Plaintiffs say this Court should refuse to transfer this case to the Northern District of Georgia. *See id.*

## II. Legal Standard

### A. The Ecclesiastical Abstention Doctrine

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. CONST. amend. I. Consistent with the First Amendment, courts cannot interfere with ecclesiastical disputes within a church or other religious organization. *See Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 720 (1976); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 113–115 (1952).

Also known as the ecclesiastical abstention doctrine, this principle recognizes that the First Amendment's Establishment Clause prohibits "judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) (citations omitted). "Matters of church government, as well as those of faith and doctrine constitute purely ecclesiastical questions." *Id.* (cleaned up). The doctrine does not unconditionally shield religious relationships from judicial review, "for to do so would necessarily extend constitutional protection to the secular components of these relationships, which would impermissibly place a religious leader in a preferred position in our society." *Id.* (internal quotations and citations omitted).

At the outset, the Court notes that "it is somewhat unclear whether the ecclesiastical abstention doctrine serves as a jurisdictional bar requiring dismissal under Fed. R. Civ. P. 12(b)(1) or an affirmative defense requiring dismissal under Fed. R. Civ. P. 12(b)(6)." *Id.* at 348 n.1 (collecting cases). Fr. Tran appears to assert the ecclesiastical abstention doctrine as a jurisdictional

bar. *See* (D.E. 26, p. 16) (arguing that "[t]his Court lacks subject matter jurisdiction over the dispute"). And Plaintiffs appear to understand Fr. Tran's argument as a jurisdictional one. *See* (D.E. 29, p. 5–7).

But "courts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy." *Rodarte v. Apostolic Assembly of the Faith in Christ Jesus*, No. H-10-4181, 2012 WL 12893656, at *3 (S.D. Tex. Feb. 29, 2012) (Hittner, J.) (citations omitted). Indeed, "courts *must* adjudicate . . . legal issues (like civil, contract, or property issues that can be decided with neutral principles of law) so that the court does not 'violate the constitutional prohibition against government established religion.'" *Id.* (emphasis added) (citation omitted). "[T]he relevant question is whether it appears certain that resolution of [the] claims will require the court to address purely ecclesiastical questions." *McRaney*, 966 F.3d at 349.

### B. Determining When Venue Is Proper

"[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous[,]" and the Supreme Court has "termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine Constr. Co., v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)). Venue is proper in three situations; a plaintiff may file suit in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If a plaintiff files in the wrong venue, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). "This question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co.*, 571 U.S. at 55.

To determine whether venue is proper, the Court considers "whether the case falls within one of the three [venue] categories set out in § 1391(b)." *Id.* at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Smith v. FCA U.S., LLC*, No. EP-20-CV-56, 2020 WL 4353178, at *2 (W.D. Tex. July 29, 2020) (Martinez, J.) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 56). As between dismissing or transferring, district courts have "discretion to transfer [a case] to a proper venue if such a transfer would serve 'the interest of justice.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (quoting 28 U.S.C. § 1406(a)); *see also Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480, at *4 (S.D. Tex. Mar. 10, 2023) (Tipton, J.) (designated for publication); *OYO Hotels, Inc. v. Maingate Worldwide, LLC*, No. 3:19-CV-2909, 2020 WL 2912198, at *4 (N.D. Tex. June 3, 2020) (Kinkeade, J.) ("The district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under § 1406(a)." (citations omitted)).

## III. Discussion

### A. Whether the Court Can Transfer Without Determining Jurisdiction

Generally, a federal court cannot rule on a case's merits "'without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).'" *Hardwick v. Factor*, No. H-10-5249, 2011 WL 1831706, at *2 (S.D. Tex.

May 9, 2011) (Rosenthal, J.) (quoting *Sinochem Int'l Co.*, 549 U.S. at 430–31). But "[a] decision to transfer a case is not a decision on the merits." *Id.* (citing *In re LimitNone, LLC,* 551 F.3d 572, 577–78 (7th Cir. 2008)). As such, "it is appropriate for this Court to decide [the] challenge to venue prior to addressing the challenge to subject matter jurisdiction." *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013) (Bates, J.) (citations omitted).[5] Indeed, "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co.*, 549 U.S. at 431 (internal quotations and citations omitted). So, a "[c]ourt may decide to proceed with determining venue before resolving [a] jurisdictional issue." *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*, No. 18-CV-820-XR, 2018 WL 6050603, at *8 (W.D. Tex. Nov. 19, 2018) (Rodriguez, J.); *see also WestRock Co. v. Douglas*, No. 4:22-CV-2646, 2023 WL 8000333, at *5 (S.D. Tex. Sept. 28, 2023) (Sheldon, Mag. J.).

Regarding the ecclesiastical abstention doctrine, "it is somewhat unclear whether" it is a jurisdictional bar or affirmative defense. *McRaney*, 966 F.3d at 348 n.1.[6] But regardless, whether the doctrine functions as an affirmative defense or as a jurisdictional bar, the answer is the same here: the Court refrains from deciding whether the ecclesiastical abstention doctrine divests this Court of subject matter jurisdiction. Instead, the Court transfers the case because the Southern District of Texas is not the proper venue.

---

[5] The Court finds the reasoning of the District of Columbia District Court persuasive in that "[a]djudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) (Roberts, J.); *see also Liu v. Lynch*, No. 14-CV-01516, 2015 WL 9281580, at *2 (D.D.C. Dec. 8, 2015) (Mehta, J.). Indeed, the Seventh Circuit has held that district courts do not err when transferring before determining subject matter jurisdiction. *See In re LimitNone, LLC,* 551 F.3d at 576–78 (relying on *Sinochem Int'l Co.*, 549 U.S. 422 to affirm and opining on federal courts' discretion to address non-jurisdictional issues, including venue, before jurisdictional issues).

[6] The Fifth Circuit has not yet conclusively resolved whether the ecclesiastical abstention doctrine is jurisdictional.

**B. The Southern District of Texas is not a proper venue for this case.**

While Plaintiffs are afforded discretion in choosing a forum, *see Atl. Marine Constr. Co.*, 571 U.S. at 63, they must also abide by venue restrictions, *see* 28 U.S.C. § 1391. As discussed above, § 1391 contemplates three instances where venue is proper. *See supra* section II.B (explaining venue is proper where: (1) all defendants are residents of the state in which the district is located; (2) a substantial part of the events giving rise to the claim occurred, or (3) any defendant is subject to the court's personal jurisdiction, if there is otherwise no district where the action may be brought). Only the second of these is relevant here. All Defendants are Georgia residents, so Plaintiffs could have filed suit in Georgia, making § 1391(b)(1) inapplicable. *See* (D.E. 21, p. 3–4; D.E. 26, p. 2). This also makes § 1391(b)(3) inapplicable, because a judicial district that can exercise personal jurisdiction over Defendants does exist. *See id.* As such, the Court only analyzes whether a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas. *See* 28 U.S.C. § 1391(b)(2).

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to assert improper venue as a defense to a plaintiff's claim for relief. As stated above, the general venue statute controls the plaintiff's choice of venue. *See Tajudeen v. Johnston*, No. 4:23-CV-610, 2023 WL 4408709, at *1 (S.D. Tex. July 7, 2023) (Hanen, J.). "Once [a] defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the judicial district of suit." *A-V Fluids, Inc. v. Jana Media, LLC*, No. 2:20-CV-196, 2021 WL 5155698, at *9 (S.D. Tex. Mar. 22, 2021) (Morales, J.) (citing *Barrow v. Sutton*, No. H-14-200, 2014 WL 12586346, at *2 (S.D. Tex. July 16, 2014) (Rosenthal, J.)); *see also Tajudeen*, 2023 WL

4408709, at *1.[7] In analyzing whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Brewer v. United States*, No. H-17-870, 2017 WL 6398637, at *1 (S.D. Tex. June 19, 2017) (Rosenthal, J.) "If venue is lacking, district courts are instructed to 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought'" under 28 U.S.C. § 1406. *Tajudeen*, 2023 WL 4408709, at *1. This decision (whether to transfer or dismiss) lies within the district court's discretion. *See id.*

Fr. Tran argues that the "allegedly erroneous W-2" that Plaintiffs received via email is the only act or omission that ties this case to this district. *See* (D.E. 26, p. 14–15). Plaintiffs argue that RCA's issuance of "a 2021 Form 1099-MISC and amended 2021 Form W-2, erroneously alleging that [Plaintiffs] received additional compensation income and engaged in an excess benefit transaction" via email forms a "a substantial part of the events giving rise to this lawsuit." (D.E. 21, p. 3) (citation omitted). The Southern District of Texas hook, according to Plaintiffs, is that Plaintiffs received these forms "via e-mail at their home in Port O'Connor, Texas." *Id.*

Plaintiffs rely on *Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*, *id.* at 3, where the district court denied the defendant's motion to dismiss for improper venue, 923 F. Supp. 950, 958 (S.D. Tex. 1996) (Hoyt, J.). There, the court found that a letter that the defendants sent to an individual associated with the plaintiff "constitute[d] a substantial part of the

---

[7] While there appears to be an intra-circuit split among the district courts in this circuit as to which party bears the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue, this Court follows the majority of courts in finding that the burden belongs to the plaintiff. *See Lawson v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021) (O'Connor, J.) ("There is a split of authority among federal courts and in the Fifth Circuit with regard to which party bears the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue." (citation omitted)); *Russo v. Barnard*, No. 3:21-CV-165, 2021 WL 5567380, at *1 (S.D. Tex. Nov. 29, 2021) (Brown, J.) ("Once a defendant files a Rule 12(b)(3) motion challenging venue, the burden of sustaining venue lies with the plaintiff." (citation omitted)).

events giving rise to this lawsuit" because "the state law claims [were] based almost entirely upon the effect of that letter[.]" *Id.* Moreover, in analyzing venue for "the federal claims for declaratory relief[,]" the court looked at where the alleged infringers'—in that case, plaintiffs—actions occurred. *Id.* The court further noted persuasive caselaw holding that declaratory judgments (for noninfringement of copyrights, trademarks, or unfair competition laws) arise where the alleged infringer is located. *Id.* (first citing *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195–96 (9th Cir. 1982); then citing *Pennwalt Corp. v. Horton Co.*, 582 F. Supp. 438, 440 (E.D. Pa. 1984) (Bechtle, J.); and then citing *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F. Supp. 1152, 1156 (D. Del. 1975) (Wright, J.)).

Here, Plaintiffs analogize the *Bounty-Full* letter to the emailed tax forms in this case. (D.E. 21, p. 3; D.E. 29, p. 7). Plaintiffs argue that "[b]ut for Fr. Tran's professional negligence in revealing confidential information" to RCA members, Plaintiffs' "employment with RCA would not have been severed and the foregoing erroneous tax documents would not have been issued." (D.E. 29, p. 7–8). Plaintiffs additionally argue that they "would not have been forced to temporarily relocate back to Georgia in order for their daughter to graduate high school, but for the foregoing professional negligence." *Id.* at 8.

But this case is different than *Bounty-Full*. As Fr. Tran notes, *see* (D.E. 30, p. 5), regarding venue for the federal law claims, the *Bounty-Full* court stated that the alleged infringers were located in the Southern District of Texas, forming the basis for venue. *See Bounty-Full Ent., Inc.*, 923 F. Supp. at 958. Here, RCA—the alleged infringer at the heart of Plaintiffs' declaratory judgment claims—is located in Georgia, not Texas. *See* (D.E. 30, p. 5).

Moreover, the emails containing the tax forms do not make up most of Plaintiffs' claims. At best, even construing all conflicts in favor of Plaintiffs, *Brewer*, 2017 WL 6398637, at *1, the

emails could be relevant to Plaintiffs' application for a declaratory judgment and less than half of Plaintiffs' claims: the FLSA claims, and the claims for fraud, negligent misrepresentation, and defamation, *see* (D.E. 21, p. 20–25), and not the other remaining five claims in Plaintiffs' complaint, *id.* at 20–30. Furthermore, these tax forms—when put in context of the timeline leading up to the complaint—appear at the tail-end of all the relevant facts and controversies that occurred throughout most of 2021 and 2022. The fact that the tax forms were emailed to Plaintiffs in Port O'Connor have no bearing on the dispute over Plaintiff Kari's resignation, *id.* at 10–12, on Plaintiffs moving to and from Texas and Georgia, *id.* at 7, 16, 17, on Defendants allegedly banning Plaintiffs from RCA locations, *id.* at 16, or on the settlement discussions, *id.* at 17. Rather, RCA emailed the tax forms in December 2022, after much of the relevant conduct underlying the suit had already occurred. *See id.* at 19. The Court also notes that Plaintiffs' allegations concede that the "documentation" and "receipts" concerning the tax allegations do not exist in the Southern District of Texas—rather, these documents are stored, according to Plaintiffs' complaint, either in RCA's "corporate office in Atlanta or the office in Winona, Texas." (D.E. 21, p. 19). Finally, as Fr. Tran notes, RCA also sent the tax forms to Plaintiffs' "home address in Roswell, Georgia, not Texas." (D.E. 30, p. 5) (emphasis omitted) (citing D.E. 27-1, p. 6). The tax forms themselves appear to be addressed to Plaintiff Kari and Plaintiff Richard's Georgia address. *See* (D.E. 27-1, p. 14, 18) (noting Roswell, Georgia address). As such, unlike in *Bounty-Full*, where the letter appeared to relate to *all* the state law claims, which were "based almost entirely" on the letter's effect, *see* 923 F. Supp. at 958, the lawsuit here is not based almost entirely on the emailed tax forms' effect; so, the emails in this case do not constitute a substantial part of the events giving rise to this lawsuit. *Cf. id.*

Nonetheless, several events preceding this lawsuit did occur or have some contact with the state of Texas. First, in conjunction with RCA, Plaintiffs moved to Winona, Texas, to expand RCA with the new Veritatis Splendor project. (D.E. 21, p. 7). Next, after the affair that sparked the events leading to the lawsuit, Fr. Tran allegedly telephonically counseled Plaintiffs, who resided in Winona, Texas. *Id.* at 9–10; (D.E. 29, p. 4). Finally, RCA allegedly banned Plaintiff Kari from the Dallas RCA location. (D.E. 21, p. 16). But all these alleged events occurred outside of the Southern District of Texas—either in Winona, Texas, or in the Dallas area. It is not enough for Plaintiffs to show that a substantial amount of the events occurred in the *state*; Plaintiffs must show a substantial tie to this *district*. *See Baldwin v. Unimark Truck Transp.*, *LLC*, No. 5:20-CV-184, 2021 WL 9553372, at *5 (S.D. Tex. Apr. 19, 2021) (Saldaña, J.) (transferring lawsuit where the Southern District of Texas had "no substantial connection to the facts of [the] case").

In sum, Fr. Tran has asserted improper venue in his motion to dismiss as reason that this Court should dismiss the case. (D.E. 26, p. 14–16). As Fr. Tran has challenged venue, it is Plaintiffs' burden to show venue is proper. *See A-V Fluids*, 2021 WL 5155698, at *9. As Plaintiffs cannot show a greater tie to this district than two emails, the Court finds that Plaintiffs have failed to show "prima facie proof that venue is proper in the" Southern District of Texas. *See A-V Fluids, Inc.*, 2021 WL 5155698, at *9 (citation omitted).[8] So, since "venue is lacking," the Court turns to an analysis of whether to dismiss or transfer the case pursuant to § 1406. *See* 2023 WL 4408709, at *1. While the Southern District of Texas is not the proper venue for this case, the Court does

---

[8] Furthermore, the Court observes that a Georgia district court can exercise general personal jurisdiction over all three Defendants, as Fr. Tran is a Georgia resident, and RCA and the Archdiocese are both Georgia nonprofits. *See* (D.E. 21, p. 3–4; D.E. 26, p. 2). When a court does not have general personal jurisdiction over a defendant, and the plaintiff fails to show venue is proper, transfer under 28 U.S.C. § 1406(a) is warranted. *See Phillips v. Warcomp, Inc.*, No. H-09-2816, 2010 WL 11646590, at *3–5 (S.D. Tex. May 25, 2010) (Rosenthal, J.).

14 / 15

not find any evidence that Plaintiffs specifically chose this venue in bad faith. *See Seville*, 53 F.4th at 894. So, the Court finds that the interest of justice favors transfer over dismissal. As such, the case must be transferred.[9]

### IV. Conclusion

For the reasons stated above, the Court concludes that venue is improper in the Southern District of Texas and that the interest of justice necessitates that this case be transferred. *See* 28 U.S.C. § 1406(a). As such, the Court **GRANTS-in-part and DENIES-in-part-as-moot** Fr. Tran's motion to transfer. *See* (D.E. 26).[10] Accordingly, the Court **ORDERS** that this case be **TRANSFERRED** to the **Northern District of Georgia.** *See* 28 U.S.C. § 1406(a).

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
        December   27, 2023

---

[9] "A district court may cure improper venue by transferring the case to any district or division in which it could have been brought if it is in the interest of justice to do so. . . . Transfer of the case to a court with proper venue is the 'usual procedure.'" *Taylor v. Rumsfeld*, No. G-05-517, 2006 WL 213961, at *2 (S.D. Tex. Jan. 25, 2006) (Kent, J.) (citations omitted).

[10] This Order has no effect on the remaining pending motions. *See* (D.E. 26, p. 1–14, 16–23; D.E. 27; D.E. 32; D.E. 33; D.E. 43; D.E. 49).